UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REZA ZEYNALI, <br><br> Plaintiff, <br><br> v. <br><br> ANTONY BLINKEN, *Sec'y, U.S. Dep't of State*, et al., <br><br> Defendants. | Civil Action No. 22-cv-2683 (BAH) <br><br> Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

In May 2021, plaintiff Reza Zeynali, an Iranian national, was selected for the State Department's diversity visa ("DV") program for Fiscal Year 2022. Compl. ¶¶ 16–17, ECF 1. This program makes up to 55,000 visas available annually, via random selection in a lottery, to citizens from countries with low rates of immigration to the United States, and who, if randomly selected, are eligible to apply each year for those diversity visas, *see* 8 U.S.C. §§ 1151(e), 1153(c); 22 C.F.R. § 42.33.[1] Since being selected, plaintiff has prepared and submitted his initial required forms, but has yet to be scheduled for an interview and adjudication of his visa

---

[1] The lottery selectees submit their initial paperwork to the Department of State's Kentucky Consular Center, which reviews it for completion and then schedules documentarily qualified selectees for interviews at their local consular posts. Defs.' Mot. to Dismiss, Ex. D, Decl. of Morgan Miles ("Miles Decl.") ¶¶ 1–2, 6–7, 9–10, ECF No. 9-6. Whether or not an interview appointment can be scheduled depends on several factors, including whether the selectee has properly submitted his or her complete paperwork, whether the Kentucky Consular Center has finished processing that selectee's paperwork, whether the local consular post has an appointment available, and whether the selectee's randomly assigned regional rank order number is next in the queue. *See id.* ¶¶ 9–10. Thus, even a selectee who promptly submitted his or her initial paperwork may not yet be eligible for an interview if, for example, the local consular post is working through a backlog of processing higher-priority visa applications and has no current appointments available, or the selectee's regional rank order number is much higher than others in the region.
  If and when a selectee has an interview at the local consular post, it is at that interview that the selectee formally makes his or her DV application. *See* 22 C.F.R. § 40.1(l)(2) (defining the making of an immigrant visa application as "personally appearing before the consular officer" and proceeding through the interview, with the required documentary evidence and forms submitted in advance). The consular officer then adjudicates the application and either issues or refuses the visa. *See* 8 U.S.C. § 1202(b); 22 C.F.R. § 42.81(a)

1

application at his local consular post.  Compl. ¶¶ 18–19.  With the fiscal year drawing to a close on September 30, 2022, after which he will lose his status as a DV program selectee, *see* 8 U.S.C. § 1154(a)(1)(I)(ii)(II), plaintiff filed this lawsuit, on September 6, 2022, seeking that the Court mandate the State Department to adjudicate his application prior to that deadline, *see* Compl. at 8 (Prayer for Relief).

The Complaint asserts a single claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, alleging that defendants—Secretary of State Antony Blinken, Assistant Secretary of State for Consular Affairs Rena Bitter, and Chargé d'Affaires of the United States Embassy in Abu Dhabi Sean Murphy, all of whom have been sued in their official capacity—are "unlawfully withholding action" on plaintiff's DV application "for an unreasonable period of time."  Compl. ¶¶ 8–10, 27–35.  The same day he filed this lawsuit, plaintiff also moved for a preliminary injunction, which is now ripe for the Court's review.  *See* Pl.'s Mot. for Preliminary Injunction ("Pl.'s Mot."), ECF No. 2.  In opposition to the pending motion for injunctive relief, defendants filed a motion to dismiss on various grounds, Defs.' Mot. to Dismiss, ECF No. 9, which motion remains pending.

Plaintiff requests "an emergency injunction and writ of mandamus," presumably requiring the State Department to schedule his visa interview and adjudicate his application before September 30, arguing that "[b]y statute, [he] is required to receive his visa before the expiration of the current fiscal year."  Pl.'s Mem. Supp. Mot. Preliminary Injunction ("Pl.'s Mem.") at 6–7, ECF No. 2-1.[2]  No statutory requirement mandates that the State Department

---

[2] Plaintiff did not file a proposed order with his Motion for Preliminary Injunction, as required by D.D.C. LCvR 7(c), and his accompanying Memorandum was likewise unclear, so the Court is left to guess at the exact form of relief requested.  His failure to establish a likelihood of success on the merits of his claim means, however, that no preliminary injunction will issue and thus any ambiguity as to the form of injunctive relief sought is inconsequential.

2

carry out a non-discretionary duty of adjudicating plaintiff's visa by the end of the fiscal year, so plaintiff fails to establish a likelihood of success on the merits of his APA claim.  Accordingly, plaintiff's motion for a preliminary injunction is denied.

I.      LEGAL STANDARD

A preliminary injunction "is an extraordinary . . . remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion" on each of four factors. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis omitted) (quoting 11A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2948, at 129–30 (2d ed. 1995)).  To obtain relief, moving parties must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities" is in their "favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018); *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016); *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016).  The first factor is "[a] foundational requirement for obtaining preliminary injunctive relief."  *Guedes v. Bur. of Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019); *see also Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (highlighting first factor as the "most important factor"); *Munaf v. Geren*, 553 U.S. 674, 690 (2008) ("[A] party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits.'" (quoting *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418, 428 (2006))).[3]

---

[3]     The D.C. Circuit has previously followed a "sliding scale" approach to evaluating preliminary injunctions, but that approach is likely inconsistent with *Winter*, *see Archdiocese of Wash. v. Wash. Metro. Area. Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (observing that *Winter* may be "properly read to suggest a 'sliding scale' approach to weighing the four factors be abandoned"); *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295–96 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (noting that "this Circuit's traditional sliding-scale approach to preliminary injunctions may be difficult to square with the Supreme Court's recent decisions in" *Winter* and *Munaf*), and therefore will not be employed here, *see Singh v. Carter*, 185 F. Supp. 3d 11, 16–17 (D.D.C. 2016).

## II.  DISCUSSION

Plaintiff's sole claim is that the government has "unlawfully with[eld] action on [his DV application] for an unreasonable period of time," in what amounts to an "unreasonabl[e] delay[]" in violation of the APA.  Compl. ¶¶ 34–35.  The APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), but that authority only extends to compelling agency action that is ministerial and non-discretionary.  As the Supreme Court has made clear, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original).  Thus, one component of either an unlawful withholding or an unreasonable delay claim under the APA, is a showing that the agency had a non-discretionary duty to take a discrete action.[4]

Plaintiff has no likelihood of success of establishing this threshold requirement, for he fails to identify any source for "a specific, unequivocal command" that the State Department must schedule his particular interview and therefore allow his visa application to be processed before the end of the fiscal year.  *Id.* (internal quotation omitted).  Pointing to 8 U.S.C. § 1154(a)(1)(I)(ii)(II), plaintiff asserts that this section means that "as a winner of the diversity visa lottery, he must receive his visa by the end of the current fiscal year."  Compl. ¶ 28; *see also* Pl.'s Mem. at 10 (arguing that after he "was randomly selected as a diversity lottery winner" and

---

[4]   Although not clearly labelled as such in the Complaint, plaintiff's claim is best characterized as an "unreasonable delay" claim under the APA, *see* Compl. ¶¶ 29, 32, 34–35 (focusing on the amount of time that defendants have allegedly withheld the adjudication of plaintiff's DV application); Pl.'s Mem. at 11–15 (analyzing the likelihood of success of the claim as one for unreasonable delay), which means that to succeed on the merits, he would have to show not only that this nondiscretionary duty existed, but also that the agency unreasonably delayed in acting on that duty.  *See Norton*, 542 U.S. at 63–64.  In assessing whether or not a given delay is unreasonable, courts must undertake an assessment of the six guiding factors set out in *Telecomm. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79–80 (D.C. Cir. 1984).  Here, however, the TRAC factors need not be addressed because plaintiff has not made the threshold showing that the State Department had a nondiscretionary duty to schedule his interview and allow him to submit a DV application.  *See Norton*, 542 U.S. at 63 n.1 (noting that "a delay cannot be unreasonable with respect to action that is not required").

properly submitted his initial paperwork, defendants "ha[d] a clear duty to conclude this," i.e., the visa application and adjudication process); Pl.'s Reply Supp. Mot. Preliminary Injunction ("Pl.'s Reply") at 27–28, ECF No. 11 (contending that under the requirements of that section, "as a DV Lottery winner whose number is eligible for interview scheduling, he is entitled to be scheduled for the said interview" before September 30, 2022).

Not so. That statutory section provides only that "Aliens who qualify, through random selection, for a visa under [the DV program] shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(I)(ii)(II). In other words, the text of this section makes clear that eligibility for a visa under the DV program is time-limited such that lottery selectees whose visa applications are not adjudicated before the end of the fiscal year lose their eligibility, with the consequence that they must reapply to the DV program through the lottery in following years and do not retain their status as selectees. This section does not impose a duty on the State Department to adjudicate the applications of every lottery selectee in the fiscal year in which they were selected and ensure that consequence befalls no one.

In fact, the State Department likely would find the task of adjudicating all selectees in a given year impossible to accomplish. Each year, the Department "looks at data and conditions . . . to estimate how many selectees may be needed to reach the statutory limit of 55,000 visas," with the result that some years—including 2022—the number of lottery selectees exceeds the 55,000 cap. Defs.' Mot. to Dismiss, Ex. D, Decl. of Morgan Miles ("Miles Decl.") ¶ 3, ECF No. 9-6. Furthermore, because each selectee, if he or she does make a DV application, may include a spouse and children as derivative applicants (whose visas, if issued, would also count towards the 55,000 cap), the number of potential DV applicants every year is far higher

than 55,000. *Id.* (showing that, in 2022, there are 118,513 total applicants in the DV program). The Department has its reasons for operating the program this way: "[I]f the Department did not over select DV participants, it would not be able to use the full allocation of DV numbers[,]" because "[t]here are selectees who fail to demonstrate their eligibility to a consular officer, and those who fail to submit a DS-260." *Id.* ¶ 4. The upshot is that under the Department's current administration of the DV program, winning the lottery does not guarantee each selectee the opportunity to have their applications adjudicated. Plaintiff has not identified a statutory source to the contrary that would impose a specific, non-discretionary duty upon the Department to ensure that all lottery selectees who properly submit their initial paperwork have their applications adjudicated before the end of the fiscal year.

### III. CONCLUSION AND ORDER

For the foregoing reasons, plaintiff has failed to demonstrate a likelihood of success on the merits of his Administrative Procedure Act claim. Consequently, the Court need not "proceed to review the other three preliminary injunction factors." *Guedes*, 920 F.3d at 10 (quoting *Arkansas Dairy Coop. Ass'n v. U.S. Dep't of Agriculture*, 573 F.3d 815, 832 (D.C. Cir. 2009)). It is therefore

**ORDERED** that plaintiff's Motion for Preliminary Injunction, ECF No. 2, is **DENIED**.

**SO ORDERED.**

Date: September 26, 2022

_____
BERYL A. HOWELL
Chief Judge